370 So.2d 477 (1978)
STATE of Louisiana ex rel. William J. GUSTE, Jr., Attorney General and Charles W. Tapp, Director, Governor's Consumer Protection Division in their official capacity and on Behalf of Barry Simon and all Louisiana Consumers similarly situated
v.
GENERAL MOTORS CORPORATION.
No. 61840.
Supreme Court of Louisiana.
September 5, 1978.
On Rehearing April 9, 1979.
Rehearing Denied May 21, 1979.
*478 Bernard, Micholet & Cassisa, Peter L. Bernard, Jr., Walter M. Babst, Joseph S. Palermo, Jr., Metairie (Otis M. Smith, Gen. Counsel, General Motors Corp., Detroit, Mich., Fulbright & Jaworski, Blake Tartt, Martin D. Beirne, Houston, Tex., of counsel), for defendant-applicant.
William A. Lovett, New Orleans, amicus curiae for La. Law Institute on La.'s Unfair Trade Practices and Consumer Protection Law.
William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, First Asst. Atty. Gen., Winston G. Decuir, Charles L. Patin, Jr., Asst. Attys. Gen., Rebecca J. Bolton, Staff Atty., Baton Rouge, for plaintiffs-respondents.
Glenn R. Ducote, Baton Rouge, amicus curiae for Baton Rouge Consumer Protection Center.
Ronald L. Hersbergen, Baton Rouge, amicus curiae, LSU Law Center.
SUMMERS, Justice.
This suit was instituted by the petition of the Attorney General of Louisiana, the Director of the Governor's Consumer Protection Division, and Barry Simon, a Louisiana citizen who purchased a motor vehicle manufactured by General Motors Corporation with a substitute engine.
The action is brought in the name of the State of Louisiana and on behalf of Barry Simon and all Louisiana citizens similarly situated. A permanent injunction is sought to restrain General Motors from selling or offering to sell any motor vehicle which it manufactures, particularly the Oldsmobile "Delta 88", unless the Division of General Motors which actually manufactured the engine in the motor vehicle is disclosed to the potential purchaser prior to the sale.
It is alleged that the cause of action is based upon Section 8 of Article IV of the Louisiana Constitution, the Unfair Trade Practices and Consumer Protection Law, (La.Rev.Stat. 51:1401-18), and Article 591 of the Code of Civil Procedure. Petitioners pray for trial by jury.
Petitioners assert they have reason to believe that General Motors has for some time engaged in unfair and deceptive acts, practices and methods in trade and commerce in Louisiana by selling automobiles, particularly 1,100 Oldsmobile "Delta 88's", in violation of Section 1405(A) of Title 51 of the Revised Statutes. These deceptive acts are said to violate Section 1405(A) of the Act in that there was a failure to disclose that a material substitution of an essential component (engine) had been made. Because of this, it is alleged, General Motors is liable to members comprising the class of Louisiana consumers who have been aggrieved by these practices and these consumers should be granted injunctive relief and restitution.
Claiming restitution under Section 1408 of the Act, petitioners pray for orders requiring the customer: 1) to return the vehicle purchased with a substitute engine and to order General Motors to return the purchase price or; 2) to require General Motors to replace the substituted engine with the proper engine at no cost to the customer; or 3) to return the vehicle to General Motors for a new auto with the proper engine; or 4) to order General Motors to pay each aggrieved consumer an amount in money damages equal to the diminution of the value of their vehicle and the inconvenience, past, present and future, suffered by the customer. Further, petitioners pray that the Court award each aggrieved consumer the actual damages sustained; order each vehicle recalled for removal of deceptive labels and require General Motors to direct the consumer to consult the owner's manual; and require changes in the owner's manual made necessary by the substituted engine.
A temporary restraining order was issued on April 19,1977 prohibiting further substitutions unless General Motors disclosed to *479 purchasers that the engine was other than one manufactured by the Oldsmobile Division of that company. Following the temporary restraining order General Motors stipulated that it had taken and would take the necessary steps to make these disclosures. As a result, by consent judgment, a preliminary injunction was entered on May 25, 1977.
Petitioners then moved for General Motors to show cause why this action should not be maintained or certified as a class action. Assuming certification of the class, the motion then prays for prohibition against communication by defendant with members of the class and for approval of a notice to all class members.
General Motors opposed the motion and moved that it be stricken as unauthorized procedure and that maintenance of this suit as a class action be disallowed. General Motors also moved that the claim of petitioner Barry Simon be dismissed, as joinder of his claim with the action of the State of Louisiana was not authorized. In addition, a plea of vagueness was filed.
After a hearing on June 1, 1977 the trial judge maintained the rule, certifying the case as a class action. When an application for rehearing was denied, defendant appealed to the Fourth Circuit.
In denying a motion to dismiss the appeal because the judgment was interlocutory, the Court of Appeal found that irreparable injury may result if the matter were not reviewed on appeal.
In considering the matter on appeal the Court of Appeal recognized the plaintiffs' right to seek injunctive relief, in a class action, on behalf of the State and on behalf of Barry Simon. The court further recognized the right of the plaintiffs to seek restitution and/or diminution, as such, in this class action, on behalf of Barry Simon, holding, however, that plaintiffs are not entitled, in a class action, to seek actual damages on behalf of Barry Simon. As thus amended, the judgment of the trial court was affirmed and the case was remanded for further proceedings. Defendant's application to this Court for certiorari was granted. 356 So.2d 1005 (1978).
The sole question before this Court on review is the propriety of the class action certification.
In Louisiana
"A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class; or
(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right." La.Code Civil Pro. art. 591.
Under this law the issues are whether the persons constituting the class are so numerous as to make it impracticable for all of them to be joined as parties and whether the character of the right sought to be enforced for or against the members of the class is common to all members of the class. No issue is presented involving the enforcement of a secondary right.
Aside from impracticability of joinder and commonality of the rights to be enforced, Louisiana requires that the party or parties who provoke a class action fairly insure adequate representation of all members. La.Code Civil Pro. art. 592.
General Motors contends that the essentials of commonality required by Article 591 is lacking and for that reason it was error to certify this case as a class action.
An unfair, deceptive practice such as the alleged substitution of engines would, under the Unfair Trade Practices and Consumer Protection Law, present a question of law common to all who purchased automobiles with substitute engines. A common question of fact results because General Motors is the producer of all vehicles involved. But this does not, in itself, satisfy the statutory requirement of a common right. Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144,147 (La.1975); Note 50 Tul.L. *480 Rev. 692 (1976). There are other essentials of commonality petitioners must establish as prerequisites to certification of this case as a class action.
The requirement of common character is only involved in true class actions. The hybrid and spurious class actions generally require no more connexity between the rights of the representative and of the absent members than the existence of a common question of law or fact, whereas the true class action requires additional and greater similarity between the claims of the members of the class. Only the true class action has been approved by Louisiana. Williams v. State of Louisiana, 350 So.2d 131 (La.1977); Stevens v. Board of Trustees of Police Pension Fund, supra.
This rule contemplates some relationship between the members of the class and its representative in addition to simply sharing the common question of law under the Unfair Trade Practices and Consumer Protection Law and the fact that they purchased vehicles produced by General Motors. No additional similarities are shown by this record. At this point of inquiry only substantial dissimilarities among the claims of the members of the class is evident. These dissimilarities are evidence of the failure of petitioners to shoulder the burden of establishing the existence of all true class action prerequisites.
In order to make a showing that other similar legal and factual relationships are common to the claims of the members of the class it is necessary to inquire into each and every purchase of a 1977 General Motors automobile with a substituted engine. A determination must then be made if any representations by their dealer or salesman to individual buyers were made regarding the source of the engine installed in the automobile purchased. Only in such an inquiry, by the testimony of the witnesses and parties to the sales transaction, could General Motors defend itself against the claim of unfairness and deceit. Only by such an inquiry could it be determined whether the purchaser was aggrieved or damaged. Only in such an inquiry could General Motors establish that many of the dealers and customers who sold and bought these vehicles had knowledge of the fact that General Motors used engines from its different divisions interchangeably in the automobiles it sold. Only by such an inquiry could it be determined whether purchasers were aggrieved, the extent to which they were aggrieved, or indeed, whether they desired redress on that account.
Another question to be answered with respect to each member of the class would be the performance of the engine acquired as compared to the performance each buyer expected from an engine produced by the division which produced his automobile. Examples of the variables involved in such comparisons are a Buick ordered with a 350 cubic inch V-8 Engine may contain a 350 cubic inch V-8 engine produced by General Motors Chevrolet, Oldsmobile or Buick Divisions; an Oldsmobile ordered with a 305 cubic inch V-8 engine may contain a 305 cubic inch V-8 engine produced by General Motors Chevrolet Division since Chevrolet is the only General Motors division producing 305 cubic inch V-8 engines. Likewise, any 1977 General Motors automobile ordered with a V-6 engine will be equipped with an engine produced by General Motors' Buick Division, since only Buick produces V-6 engines for General Motors passenger cars.
All General Motors divisions do not produce all the engines which may be ordered by purchasers of automobiles made by that division. The same is true of the 14,000 or more parts which make up any General Motors automobile. Many of the components other than engines may be produced by other divisions or by independent suppliers. Specific identification of the source of these components is not required and their use has long been accepted in the automotive industry, and other industries as well. The practice has been recognized by the Federal Trade Commission in In Re General Motors Corporation 53 FTC 1239 (1957), as legitimate, involving no deception, and necessary to America's mass production techniques.
*481 As these recitations indicate, in some instances, the dealer who sells the car may well be the proper defendant because General Motors does not sell directly to the consumer. But this conclusion cannot be reached without a detailed analysis of each transaction to determine where liability, if any, lies.
Thus it is apparent that there are substantial differences among the purchasers of General Motors automobiles as to the representations made with respect to those purchases, the witnesses to the transactions and the defenses to be asserted to almost every claim. There are, moreover, substantial differences pertaining to the motives for the many purchases and the performance expected by different purchasers from different engines. Different defendants may also be appropriate to the claims of the alleged aggrieved parties. The claims of the members of the class are therefore uncommon.
In addition to this lack of commonality there are other significant factors which deny a predominant role to the common issue of law and fact, which arises because these alleged claims would all concern the Unfair Trade Practices and Consumer Protection Law, and the fact that General Motors produced all automobiles involved. These other significant factors must be balanced against factors favoring class actions before the class action is deemed superior to other available methods for the fair and efficient adjudication of the controversy. One such factor requires that the class action be manageable. City of Philadelphia v. American Oil Co., 53 F.R.D. 45 (D.N.J.1971); Lah v. Shell Oil Co., 50 F.R.D. 198 (S.D.Ohio 1970).
Because of the large number of potential claimants, the probable diversity and complexity of their claims and the fact that most reside at considerable distance from the forum, the difficulties likely to be encountered in the management of the case as a class action outweigh the benefits that might be expected from a class action. The problem would undoubtedly be compounded by the jury trial petitioners seek. As the court observed in Schaffner v. Chemical Bank, 339 F.Supp. 329 (S.D.N.Y.1972).
"Parenthetically, the notion of utilizing a jury trial in a class suit containing the varied problems certain to abound herein, is enough to chill any further discussion of the required superiority of a class claim over other available methods for the fair and efficient adjudication of the controversy. Such a trial, whether one trial or the multiple mini-trials probably required, would withdraw from all other usefulness for years to come the federal judicial personnel involved. Where one could muster jurors willing to devote themselves so indefinitely in time from their accustomed tasks, is puzzling. And one might relevantly askwhat public interest would be served by devoting the public's facilities in this way and what just purpose requires such a colossal marshalling of judicial resources and their supporting personnel?"
It should be noted here also, that the Attorney General's suit is not necessarily confined to the 1,100 Delta 88 Oldsmobiles. By its broad allegations and prayer it may conceivably involve all General Motors Automobiles sold in Louisiana in which substitute engines have been installed. The complexity of a suit involving such a situation would unquestionably make it unmanageable.
The principle was approved in Williams v. State of Louisiana, 350 So.2d 131 (La.1977), in these words:
"Great differences of individual issues and evidence involve the possibility of fragmentation of the class action in effect into multiple lawsuits, to the prejudice of its manageability and the judicial efficiency contemplated by this procedural device." 350 So.2d 136.
As the record discloses the 1,100 automobiles involved were purchased from dealers in every section of the State. Purchasers reside in cities, towns and villages throughout the length and breadth of Louisiana. The burdens imposed upon the court in supervising multiple discovery, pretrial hearings, adducing evidence and instructing juries *482 would be enormous. This, together with the prevalence of myriad individual fact questions in the sales transactions militates against a class action certification.
For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside, and the right to maintain this suit as a class action is denied. The case is remanded to the trial court for further proceedings not inconsistent with the reasons assigned.
SANDERS, C. J., assigns additional concurring reasons.
TATE, J., dissents and assigns reasons.
DIXON, J., dissents.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., concurs and assigns reasons.
SANDERS, Chief Justice (additional concurring reasons).
The Attorney General of Louisiana brings this suit under the Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401 et seq. The petition sets forth a hybrid action. An action is brought in the name of the State for injunctive relief and restitution. There is also a class action on behalf of Dr. Barry Simon, an aggrieved automobile purchaser, representing all purchasers similarly situated, seeking in addition to injunctive relief and restitution, the actual damages of each aggrieved purchaser.
I agree that the class action cannot be maintained.
LSA-R.S. 51:1409 provides:
"Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act or practice was knowingly used, after being put on notice by the director or attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney's fees and costs. Upon finding by the court that an action under this section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney's fees and costs." (Emphasis supplied.)
If Dr. Simon had attempted to bring a class action on behalf of all purchasers to recover actual damages, the action would be prohibited by the statute. The Attorney General cannot create the authority for a class action for actual damages by championing his cause and making him the representative of the class.
It is true that LSA-R.S. 51:1414 allows the Attorney General to use all other existing authority in actions to enforce the Unfair Trade Practices Law. This section makes clear, however, that the authority applies only to "actions on behalf of the state." The state, itself, can bring no class action for restitution and damages, because among other impediments it is not a member of the class. LSA-C.C.P. Art. 591.
Our holding as to the class action, of course, does not defeat the basic injunction suit, in which a preliminary injunction has already issued.
LSA-R.S. 51:1407 authorizes the Attorney General to bring an action for injunctive relief "in the name of the state" against an offender to enjoin the use of an unfair trade practice.
The very next section, LSA-R.S. 51:1408, then provides:
"The court may issue such additional orders or render judgments against any party, as may be necessary to compensate any aggrieved person for any property, movable or immovable, corporeal or incorporeal, which may have been acquired from such person by means of any method, act or practice declared unlawful by *483 R.S. 51:1405, whichever may be applicable to that party under R.S. 51:1418."
This section authorizes the court in the state's injunction suit to order restitution to any aggrieved person for any property acquired by means of an unfair trade practice. This additional relief, however, lies within the discretion of the court. See Breeden and Lovett, Louisiana's New Unfair Trade Practice and Consumer Protection Law, 20 La.Bar J. 307, 321 (1973); Comment, Louisiana's Consumer Protection LawThree Years of Operation, 50 Tul.L.Rev. 375, 385-386 (1976).
The authority to order restitution in the state's injunction suit does not create a class action, and it should not be so denominated. See 50 Tul.L.Rev. 386. Restitution is not a matter of right. The aggrieved purchasers are not party litigants. The restitution order is in favor of the state. For the enforcement of the order, the statute provides a remedy for contempt of court and a civil penalty of not more than $5,000. LSA-R.S. 51:1416.
For the additional reasons assigned, I respectfully concur.
TATE, Justice, dissenting.
The court of appeal correctly decided the issues involved, 354 So.2d 770 (La.App. 4th Cir. 1978), and I respectfully dissent for the reasons assigned by that court.
CALOGERO, Justice, dissenting.
I respectfully dissent for the reasons so ably expressed by the author of the majority opinion in the Court of Appeal at 354 So.2d 770 (La.App. 4th Cir. 1978).
DENNIS, Justice, concurring.
I respectfully concur in the reversal of the court of appeal judgment. However, I cannot subscribe fully to either the opinion of the Court or the additional concurring reasons of the Chief Justice.
The Unfair Trade Practices and Consumer Protection Law creates two separate causes of action: one to be instituted by the State, and one to be instituted by the private individual who claims to have been aggrieved. La. R.S. 51:1407, 1409. The statute bans class actions, or actions in a representative capacity, in behalf of persons who have suffered loss because of unfair trade practices. La. R.S. 51:1409. However, in connection with an action to enjoin an unfair trade practice brought by the State the Court may issue additional orders or render judgments compensating persons who have been aggrieved by the unfair trade practice. La. R.S. 51:1408. Comment, Louisiana's Consumer Protection LawThree Years of Operation, 50 Tul.L.Rev. 375, 385-86 (1976); Comment, The Louisiana Unfair Trade Practice and Consumer Protection Act: An Analysis, 34 La.L.Rev. 634, 641-42 (1974); P. Breeden and W. Lovett, Louisiana's New Unfair Trade Practice and Consumer Protection Law, 20 La.Bar J. 307 (1973).
The statute does not expressly provide a procedure for the Court to follow in compensating an aggrieved person in connection with an action by the State for injunctive relief. Arguably, it is not necessary that an aggrieved person be made a party to the action in order to redress his grievance. See, Comment, The Louisiana Unfair Trade Practice and Consumer Protection Act: An Analysis, 34 La.L.Rev. 634, 642-43 (1974). Thus, La. R.S. 51:1408 may provide a class action of sorts, different from that authorized by La. C.C.P. art. 591, for which the courts must formulate procedural rules. Id. p. 642. It seems more likely, however, in view of the clear ban against class actions by private persons contained in La. R.S. 51:1409, that the legislature did not intend to create a special kind of class action for aggrieved persons in connection with the State's suit for injunctive relief. Instead, it is probable that the lawmakers meant only to authorize the State's resort to joinder, cumulation of actions and other procedures provided by law in order to implead an aggrieved person and repair the damage done to him. See, La. R.S. 51:1414.
Accordingly, the instant case raises novel procedural questions which should be resolved in order to foster orderly administration *484 of this and similar litigation by the trial courts. Neither the opinion of the court nor the additional concurring reasons adequately addresses these issues. Moreover, both of these opinions seem to agree upon a restrictive interpretation of the class action authorized by La. C.C.P. art. 591 with which I cannot concur. Instead, I continue to adhere fully to the principles of class actions enunciated by this Court in Williams v. State, 350 So.2d 131 (La. 1977) and Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144 (La. 1975), although I am of the opinion that the class action is unavailable in the instant case.
For the reasons assigned, I respectfully concur.

ON REHEARING
DIXON, Justice.
This deceptive trade practice suit was brought by the Attorney General of Louisiana, the Director of the Governor's Consumer Protection Division, and Barry Simon, a Louisiana consumer and purchaser of a 1977 Oldsmobile automobile. Their petition alleges that General Motors Corporation, through its Oldsmobile division, installed engines manufactured by its Chevrolet division into one thousand four hundred sixty-seven Oldsmobile automobiles which were thereafter sold to Louisiana consumers in Louisiana. The petition further alleges that the purchasers were not advised of the substitution either prior to the sales or at the actual transactions. The plaintiffs argue that these acts are in violation of the Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401-1418, because General Motors failed to disclose the material substitution of an essential component, the vehicles' engines. Petitioners prayed for injunctive relief, restitution,[1] and actual damage awards to each consumer.
On April 19, 1977 the civil district court for Orleans Parish issued a temporary restraining order prohibiting further substitutions unless General Motors disclosed the engine's source. After the company stipulated to the necessary steps for making these disclosures, a preliminary injunction was entered by consent judgment on May 25, 1977. Petitioners then moved to require General Motors to show cause why the suit should not be maintained as a class action. After a hearing on June 1, 1977, the district court maintained the rule, thereby certifying the case as a class action. The defendant appealed to the Court of Appeal for the Fourth Circuit.
The Court of Appeal recognized the plaintiffs' right to seek injunctive relief and restitution and/or diminution in a class action. However, the court interpreted R.S. 51:1409 to preclude either the Attorney General or Mr. Simon from seeking actual damages in a representative suit. The court then affirmed the district court judgment as amended and remanded the case for further proceedings. 354 So.2d 770 (La.App. 1978). Defendant thereafter sought and was granted certiorari to this court. 356 So.2d 1005 (La. 1978).
On original hearing, this court reversed the decisions of the lower courts and in effect held that a class action was improper for this litigation because the essential of commonality was missing. To reach this result, the court took notice of the issues of knowledge and reliance vigorously propounded by the defendant and concluded that "a detailed analysis of each transaction [was necessary] to determine where liability, if any lies." Furthermore, the court made reference to certain practical considerations, such as the statewide distribution of consumers and dealers who would be required to appear in a single forum if a *485 class action were pursued, as militating against a class action. The State's application for rehearing was granted on October 5, 1978.
In response to widespread consumer dissatisfaction with their treatment in the marketplace, the Louisiana legislature passed Act 759 of 1972 which embodied the Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401-1418. The act created the Governor's Consumer Protection Division, an agency headed by a director which is empowered to conduct studies and research, to investigate, and to conduct public and private hearings into commercial and trade practices in distribution, financing, and furnishing goods and services to or for the use of consumers. The division also has the authority to suggest methods of obtaining consumer representation on public boards and commissions, to advise and assist in developing policies and programs to benefit consumers, to promote consumer education, and to advise the Attorney General of unfair methods of competition and of unfair and deceptive practices. R.S. 51:1404. The act also created the Permanent Consumer Advisory Board, a seventeen member body composed of representatives of many segments of Louisiana society. The director of the Governor's Consumer Protection Division is authorized to draft rules and regulations for the suppression of unfair competitive methods or deceptive practices which he must submit to the board and the Attorney General for approval. If approved, the rules and regulations are adopted as prescribed in the state administrative procedures act (R.S. 49:951-966). R.S. 51:1405.
As a further method of discouraging unfair or deceptive practices, the Attorney General and the director are empowered to make investigative demands for information and for documentary or physical evidence and to issue investigative subpoenas for deposition testimony. R.S. 51:1411, 1412. Those who are requested to disclose information may seek protective orders, but if none is granted, the director and the Attorney General may apply to the court for an order compelling compliance if the information sought is not furnished within specified time periods. R.S. 51:1411, 1412. Disobedience to an order compelling compliance is punishable as a contempt of court. R.S. 51:1413.
The act provides for a private cause of action by permitting any person who suffers ascertainable loss from a deceptive or unfair practice to bring an action for the recovery of actual damages. However, class actions for actual damages are specifically forbidden to private litigants. R.S. 51:1409. The plaintiff in such an action is required to mail a copy of his petition to the Attorney General and the director and a copy of any judgment or decree entered in the matter. If an award is made to the plaintiff, he may also recover reasonable attorney's fees and costs; however, if the suit was groundless and brought in bad faith or to harass the defendant, the defendant is entitled to attorney's fees. Treble damages are available in cases of a knowing use of the deceptive or unfair act. A one year prescriptive period for commencing the action is provided. R.S. 51:1409.
R.S. 51:1407 and 1408 deal with activities undertaken by the State through its representatives to enforce the substantive provisions of the act. Under R.S. 51:1407, the director is empowered to instruct the Attorney General to bring a suit for injunctive relief against any person who is using, has used, or will use a method, act or practice declared unlawful by R.S. 51:1405. The court applied to is authorized to issue temporary restraining orders, preliminary injunctions and permanent injunctions without requiring a bond from the State. R.S. 51:1407.
R.S. 51:1408 provides:
"The court may issue such additional orders or render judgments against any party, as may be necessary to compensate any aggrieved person for any property, movable or immovable, corporeal or incorporeal, which may have been acquired from such person by means of any method, act or practice declared unlawful by *486 R.S. 51:1405, whichever may be applicable to that party under R.S. 51:1418."
The interpretation of this provision has assumed great importance in this case. The defendant argues that this statute, at most, permits the Attorney General to cumulate the claims of private individuals at the same time he seeks injunctive relief, and that it does not authorize a class action on behalf of aggrieved consumers for either restitution or actual damages. The State, on the other hand, initially interpreted this provision to permit a class action instituted by the Attorney General on behalf of Louisiana consumers for both restitution and actual damages. However, after the Court of Appeal ruled that the Attorney General was not authorized to proceed in a representative fashion for actual damages, the State abandoned this theory and now argues for only the remedy of restitution through the class action device.
In reaching its conclusion, the Court of Appeal accepted the defendant's argument that class actions for actual damages were prohibited by § 1409, regardless whether they were instituted by aggrieved consumers (the actual terms of § 1409) or by the Attorney General under the authority granted him in § 1407 and § 1408. However, on the basis of the distinction drawn between damages and restitution in Articles 2545 and 2547 of the Civil Code,[2] the court interpreted "actual damages" as used in § 1409 to mean "relief other than the refund of the purchase price and the return of the status quo that constitutes restitution." 354 So.2d at 775.
We believe that the Court of Appeal correctly interpreted the statute. Certainly the Civil Code appears to distinguish between restitution and diminution on the one hand and damages on the other, C.C. 2545, 2547. The availability of restitution or diminution as an available remedy in enforcement actions has also been recognized by numerous commentators. See Breedon & Lovett, Louisiana's New Unfair Trade Practice and Consumer Protection Law, 20 La.B.J. (1972); Comment, 50 Tul.L.Rev. 375 (1976); Comment, 34 La.L.Rev. 634 (1974).
Moreover, the interpretation of the statute urged by the defendant would give undue breadth to § 1409. Section 1409 prohibits individuals from instituting class actions for actual damages; nothing in the statute can be read to limit the availability of the class action device for a restitutionary recovery in an enforcement action instituted by the Attorney General. The interpretation proposed by the defense appears strained, especially in light of the broad authority granted the Attorney General in R.S. 51:1414:
"The attorney general may use in the enforcement of this chapter all other authority for investigation, supervision and conduct of actions on behalf of the state which is provided in the Louisiana Constitution, and for the enforcement of this chapter and its provisions, the attorney general may use all other authority and procedures available to persons under the Louisiana Civil Code, Code of Civil Procedure and Revised Statutes." [3]
Had the legislature intended to prohibit the class action device in enforcement cases, this was the place to do it. Moreover, *487 we note that an anomalous result would often arise from the defendant's interpretation of this issue. To prohibit the class action in this instance would restrict the availability of compensation under § 1408 to relatively minor infractions of the act, those in which affected consumers could be successfully joined. Under the view propounded by General Motors, once the parties were too numerous to be joined, no compensation could be obtained for the aggrieved consumers. Nothing in common sense or in § 1408 supports this conclusion. Therefore, we conclude that the Court of Appeal was correct in ruling that the Attorney General could bring a class action for restitution or diminution as a part of his enforcement authority.
The defendant has argued that the Attorney General is not permitted to bring the class action because he is not an adequate representative of the class as required by C.C.P. 591. However, § 1414 entitles the Attorney General to use all procedures in the Code of Civil Procedure, which clearly includes the class action. It is only plausible that he would bring such an action on behalf of the aggrieved consumers of the State. Whether the Attorney General may simply bring the class action himself or must authorize a representative aggrieved consumer to do so seems irrelevant, in any matter. What is evident is the legislature's intent that the Attorney General supply the court with the necessary evidence to determine the availability and amount of compensation. Certainly one method of doing this is by the class action.[4] We therefore do not accept the defendant's argument that the Attorney General cannot bring the class action because he is not an adequate representative of the class.
The inquiry now turns to the propriety of maintaining the class action in this litigation. The redactors of the Code of Civil Procedure patterned the Louisiana class action after Federal Rules of Civil Procedure 23 as it was promulgated in 1937. C.C.P. 591, Official Revision Comment (b); Williams v. State, 350 So.2d 131 (La.1977); Stevens v. Board of Trustees of the Police Pension Fund, 309 So.2d 144 (La.1975). The spurious and hybrid class actions of the federal rule were rejected, and only the true class action was authorized by the redactors. C.C.P. 591. Official Revision Comment (c); Stevens v. Board of Trustees of the Police Pension Fund, supra.
Articles 591 and 592 of the Code of Civil Procedure impose certain requirements on the class action device. There must be (1) a class so numerous that joinder is impracticable; (2) the joinder of one or more parties who are members of the class and who are so situated that they will adequately represent absent class members; and (3) a "common character" between the rights of the representatives and the absent members of the class. Williams v. State, supra. If the first two requirements are fulfilled, the proper inquiry is whether the character of the right sought is "common to all members of the class." C.C.P. 591(1).
In Stevens it was noted that "[the] existence of a common question of law or fact does not by itself justify a class action." 309 So.2d at 151. The court should consider certain functional and pragmatic factors in deciding whether the class action is clearly more useful than other procedures for the definitive determination of the right asserted.[5] Furthermore, we noted in Stevens the *488 different but related values involved in determining the propriety of the class action:
"In determining how the legislature intended the courts to define and apply the concept of allowing a class action to enforce rights with a common character, we are mindful of the basic goals or aims of any procedural device: to implement the substantive law, and to implement that law in a manner which will provide maximum fairness to all parties with a minimum expenditure of judicial effort. Implicit, then, in decision that rights are of a common character is a consideration of the extent to which a clear legislative policy might be thwarted, or hampered in its implementation, by the lack of availability of the class action device.
But this does not end the inquiry. Fairness to the parties demands at the least that the relationship between the claims of members of the class should be examined to determine whether it would be unfair to the members of the class, or to the party opposing the class, to permit separate adjudications of the claims. In determining whether it would be unfair to require separate adjudications, for instance, the courts should consider the precedential value of the first decision, as well as the extent of injustice that will be produced by inconsistent judgments in separate actions. Another factor to be considered, for example, is the size of the claims of the absent members of the class, for the greater the claim, the greater the interest of its owner in prosecuting it in a separate action." 309 So.2d at 151.
With these goals in mind, we turn to the application of the criteria announced in Stevens and refined in Williams to the facts of the case at hand.
There are one thousand four hundred sixty-seven members of the proposed class who are spread throughout the State. Certainly this number of separate suits would pose a significant risk of inconsistent adjudications and earlier separate determinations with a prejudicial effect upon subsequent separate litigation. A determination by one court that the defendant owed no duty to disclose the engine's origin, if affirmed on appeal and with review refused or not sought, could affect other suits in which facts not presented in the first case might give rise to a different result. Moreover, the class is so large that the courts would be greatly burdened by separate suits or by the joinder or intervention of interested parties in separately brought actions. In Williams v. State, supra, a class of six hundred prisoners was considered so numerous as to burden the court system if private actions were pursued; the additional eight hundred members of this class reinforce the conclusion that separate litigation would unduly burden the district courts.
A second consideration is whether the prosecution of separate actions poses a serious threat of substantially impeding the ability of class members to protect their interests. In Williams, we emphasized the poverty and isolation of the inmate class members and further stressed the small value of the individual claims. Although the members of this purported class are not necessarily impoverished or isolated, their damages seem relatively small, and, in all *489 likelihood, would not be sought in individual litigation except by a fraction of the class members. General Motors has alleged that twelve suits have been filed which claim damages in the thousands of dollars. However, this information merely demonstrates the necessity of a class action, since more than fourteen hundred arguably aggrieved consumers apparently do not believe their damages sufficiently great to justify the expense of private litigation. Certainly those few consumers who anticipate large damage awards and who wish to control their own litigation are entitled to withdraw from any class action pursued by the Attorney General. Williams v. State, supra.
A third criterion is a determination whether the defendant resists liability for reasons which are generally applicable to the entire class. At this point in the litigation, General Motors has not filed an answer to the substantive charges and it is therefore unclear whether its defense will be applicable to the entire class. It is possible that defendant will be able to raise some defenses, such as notice and lack of reliance, against some plaintiffs and not against others. However, it is also possible that General Motors will seek to defend its actions as not being unfair trade practices, a defense which is applicable to all plaintiffs.
Louisiana law requires the questions of law or fact which are common to class members to predominate over any questions which affect only individual members. In the instant litigation, the common question of law, the existence of a duty on General Motors' part to reveal the independent sources of the car engines, appears to predominate over any individual questions of law or fact suggested by the record.[6] Although it is true, unlike Williams, that competing individual issues of law have been raised in the pleadings, these interjected issues are largely conjectural (that the plaintiffs were somehow aware of the engine substitutions), whereas the issue of the defendant's legal duty is obviously common to every case. A contrary holding would permit a defendant to defeat maintenance of a class action merely by alleging the existence of a possible defense against some class members but not against others. We are also aware that the defendant may use pretrial discovery, C.C.P. 1421 et seq., to determine whether some class members were indeed informed of the engine substitutions. The mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship does not defeat a class action. Williams v. State, supra; Stevens v. Board of Trustees of the Police Pension Fund, supra. Therefore, the fact that some class members may recover damages while others do not should not alone bar the use of this procedure.[7]
A final consideration is whether the class action is the superior procedural vehicle for the fair and efficient adjudication of the controversy. An initial factor for this determination is the interest of class members in controlling the prosecution of individual actions. Although several large claims have been filed, it is significant that only a small fraction of the class members believe their damages to merit the expenses of private litigation. It seems logical to conclude that for the vast majority of the one thousand four hundred sixty-seven consumers *490 who received substituted engines there is no significant interest in controlling the prosecution of individual suits. The fact that only a very few individual suits have been brought is also relevant to a consideration of the second factor, the extent and nature of litigation already begun by the class members. In general, a class action is more useful when only a limited number of additional suits has been filed. Therefore, "the class action device is highly useful here; in one action, the court can process the claims of all but about [1%] of the persons involved." Williams v. State, supra at 135.
A third important factor in deciding whether a class action is superior to other procedures is the desirability of concentrating the litigation in one forum. Unlike the individual suits filed in Williams, which were all brought in the same judicial district, the individual suits in the present controversy have been filed in all areas of the State. It is obviously cumbersome for many parties to be required to come to New Orleans to litigate an action which arose in their home town. This factor militates against the use of the class action.
A fourth factor is "the difficulties likely to be encountered in the management of a class action." In the instant case it is clear that not all the witnesses or class members are within a single vicinity. However, we indicated in Williams that "assuring reasonable notice of incidental episodes in the litigation, as well as . . . distributing any recovery, if awarded," 350 So.2d 131, 136, were the principal concerns involved in weighing class manageability. The members of this class can be discovered by defendant through the sales list of its individual dealers and can be revealed to the plaintiffs to insure that all members of the class are kept abreast of the litigation and that all members can participate in the distribution of the damages, if any are awarded. Even though individual written notice may be required for identifiable class members, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Williams v. State, supra, the cost of such notice is not unreasonable, especially in light of the amount possibly at issue in the litigation. In short, manageability is no acute problem in this case.
Based on these considerations, we believe the trial judge was correct to maintain the class action. We therefore affirm the decision of the Court of Appeal and remand the case to the district court for further proceedings in accordance with the views expressed herein. Defendant is cast for costs.
SUMMERS, C. J., dissents and would adhere to the original opinion.
MARCUS, J., dissents and assigns reasons.
DENNIS, J., dissents for the reasons assigned by him in concurring in the original opinion.
MARCUS, Justice (dissenting).
I do not agree that this suit can be properly maintained as a class action, whether for damages or restitution, under the wording of La.R.S. 51:1407, 1408 and 1409. According to these provisions, two separate actions are available to obtain relief from unfair trade practices. A private action for damages is created in section 1409 for any person who suffers any ascertainable loss of money or movable property as a result of the unlawful trade practice. Class actions for damages, however, are specifically prohibited. In addition, section 1407 provides that the attorney general can bring an action for injunctive relief in the name of the state against any person engaging in an unlawful trade practice. This section authorizes the district courts in which such suits are brought to issue temporary restraining orders or preliminary and permanent injunctions. Section 1408 authorizes the court to grant additional relief; it does not confer additional rights upon the attorney general. Specifically, it provides that, where the attorney general has instituted a suit for injunctive relief pursuant to section 1407, the district court, in addition to awarding injunctive relief, may issue such additional orders or render judgments *491 against any party as may be necessary to compensate any aggrieved person for any property, movable or immovable, corporeal or incorporeal, which may have been acquired by means of an unlawful trade practice. Thus, in the instant case, the district court would be empowered to grant injunctive relief; moreover, it could compensate aggrieved party plaintiffs by ordering full return of the purchase price, reduction of the purchase price and/or damages, whichever is appropriate. However, in order to qualify for such relief, the aggrieved person must be made a party to the lawsuit whether by resort to the procedural devices of joinder, consolidation of cases, cumulation of actions or intervention. To hold otherwise would be to impermissibly circumvent the explicit ban on representative actions contained in section 1409.
The majority interprets the ban on class actions contained in section 1409 to apply only to actions for damages as opposed to those seeking restitution. In support of this distinction, it cites civil code articles on redhibition. However, Louisiana's unfair trade practices act is modeled after the Uniform Deceptive Trade Practices Act, drafted by the American Bar Association's Committee on Unfair Competition and approved by the National Conference of Commissioners on Uniform State Law. Analogy to the Louisiana Civil Code articles on redhibition is therefore inappropriate to interpretation of this statute. Moreover, it leads to untenable results. Section 1409 provides that an injured party "may bring an action individually but not in a representative capacity to recover actual damages." The majority interprets this to mean that, although class actions for actual damages are prohibited (whether instituted by the aggrieved consumer or the attorney general), class actions seeking restitution are not. Extending this distinction to its logical conclusion, section 1409 (which creates a private action for consumers injured by unfair trade practices) would allow an injured consumer to file suit seeking damages, but would preclude him from seeking restitution. I do not believe the legislature intended such a result. Accordingly, I respectfully dissent.
NOTES
[1] The plaintiffs requested orders (1) requiring the customers to return the vehicle purchased with a substitute engine and to order General Motors to return the purchase price; or (2) requiring General Motors to replace the substituted engine with the proper engine at no cost to the consumer; or (3) requiring the customer to return the automobile and requiring General Motors to supply a new car with a proper engine; or (4) ordering General Motors to pay each customer damages equal to the diminution of the value of the vehicle and for the past, present and future inconvenience suffered.
[2] Article 2545 provides:

"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages."
Article 2547 states:
"A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: Of Conventional Obligations.
It may, according to circumstances, give rise to the redhibition, or to a reduction of the price, and to damages in favor of the buyer."
[3] See also R.S. 51:1404 B: "The attorney general may receive information and documentary material from the division and may receive and otherwise investigate complaints with respect to acts or practices declared to be unlawful by this chapter or other laws of this state, and inform the public with respect thereto. The attorney general may institute legal proceedings and take such other actions provided for herein or which are necessary or incidental to the exercise of his powers and functions."
[4] In this instance the Attorney General has chosen to bring a class action, apparently for the procedural safeguards it offers. The statute discusses judgments against "any party" in favor of "any aggrieved person," and does not therefore limit this evidence-producing function of the Attorney General to the institution of class action procedures.
[5] The factors considered in Stevens are:

"`* * * An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.'" 309 So.2d at 150-151.
In Williams we set forth similar but more detailed criteria; see 350 So.2d 131, 134, n. 3.
[6] On this issue the Court of Appeal stated:

"While we recognize, in the instant case, some minimal differences in the circumstances surrounding the sales of new automobiles involving different dealerships and different profit margins and some varying claims, nevertheless, the proof related to the purchases of automobiles and the consumers' claims will, to a large extent, be similar in nature. Under the circumstances of this case, we reject defendant's argument that the right sought to be enforced is not common to all members of the class because sales were made from different dealerships at different prices, resulting in different degrees of damages in every case. We conclude, therefore, that class action procedure is permitted in the instant case unless the Unfair Trade Practices and Consumer Protection Law prohibits its use." 354 So.2d at 774.
[7] See Note, 38 La.L.Rev. 1061, 1071 (1978), for a discussion of alternative methods for distributing damage awards in class actions in which different recoveries are sought.