817 So.2d 1234 (2002)
Gwendolyn GUILLORY, et al.
v.
UNION PACIFIC CORP., et al.
No. 01-0960.
Court of Appeal of Louisiana, Third Circuit.
May 15, 2002.
Rehearing Denied June 26, 2002.
Clayton Davis, Hunter W. Lundy, James D. Cain, Lundy & Davis, L.L.P., Lake Charles, LA, Brent L. Chism, Sanders, Crochet & Chism, L.L.P., Lake Charles, LA, for Plaintiffs/Appellants, Gwendolyn Guillory, et al.
William B. Monk, Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P., Lake Charles, LA, for Defendants/Appellees, PPG Industries, Inc., W.J. Peard, A.L. Greathouse, Harry C. Hank, Tommy G. Brown.
David Andrew Fraser, Fraser, Morris & Wheeler, L.L.P., Lake Charles, LA, William H. Howard, III, Alissa J. Allison, Neil C. Abramson, Phelps Dunbar, L.L.P., New Orleans, LA, Steven J. Levine, Patrick O'Hara, Phelps Dunbar, L.L.P., Baton Rouge, LA, for Defendants/Appellees, Dallas Stutes, Union Pacific Railroad Company.
Court composed of Chief Judge NED E. DOUCET, Jr., JIMMIE C. PETERS, and MARC T. AMY, Judges.
PETERS, J.
This is an appeal brought by the plaintiffs following the trial court's denial of the plaintiffs' motion for class certification. *1235 For the following reasons, we reverse and remand for further proceedings.
On April 20, 1983, approximately 12,000 gallons of perchloroethylene (PCE), a toxic and hazardous chemical, were spilled at a railroad yard owned by Union Pacific Railroad located just north of a section of Lake Charles, Louisiana, known as the Fisherville community. After recovery of some of the PCE, wells were installed in an effort to monitor the movement of the PCE through the subsurface and to measure the amount of ground and groundwater contamination in the Fisherville community.
On October 5, 1998, Gwendolyn Guillory and Earnie Vezie filed suit on behalf of themselves[1] as well as other residents and property owners in the Fisherville community. They initially named as defendants Union Pacific Corporation, through its subsidiary, Union Pacific Railroad Company (Union Pacific); W.J. Peard; A.L. Greathouse; Harry C. Hank; Tommy G. Brown; PPG Industries, Inc.; Dallas Stutes; and the State of Louisiana through the Department of Environmental Quality (DEQ). The plaintiffs asserted negligent and/or reckless, wanton, and willful misconduct on the part of all named defendants and sought damages for loss of property value, inconvenience caused by the spill and contamination, intentional and negligent infliction of emotional distress, anguish, fear of injury caused by the spill and/or increased risk of developing a disease as a result of the spill. The matter is before us on appeal because, after a January 21, 2001 hearing, the trial court denied the plaintiffs' motion for class certification.
The prerequisites for class action lawsuits are found in La.Code Civ.P. art. 591 et seq. Pertinent to the issues before us is La.Code Civ.P. art. 591, which provides:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

*1236 (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
C. Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class.
Thus, litigants seeking class certification must satisfy the five criteria set forth in La.Code Civ.P. art. 591(A) and at least one of the three criteria found in La.Code Civ.P. art. 591(B).
Following the January 21, 2001 hearing, the trial court took the certification issue under advisement and, on March 30, 2001, issued reasons for judgment rejecting the plaintiffs' request for certification. In reviewing this judgment, we apply the abuse of discretion standard. See Banks v. New York Life Ins. Co., 98-0551 (La.7/2/99), 737 So.2d 1275, cert. denied, 528 U.S. 1158, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000).
In rejecting the request for class certification, the trial court focused on the nature and extent of the "questions of law and fact common to the class." La.Code Civ.P. art. 591(A)(2). The trial court concluded that these common issues of law and fact did not "even approach predominance over individual issues." Thus, the trial court found it unnecessary to consider any of the other criteria required by La. Code Civ.P. art. 591. We find that the trial court erred in its conclusion.
The Louisiana codal provisions for class actions are based upon the federal provisions. See Banks, 737 So.2d 1275; Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La.9/9/97), 703 So.2d 542. This fact makes reference to federal jurisprudence helpful when analyzing a class action issue. In Achem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Supreme Court addressed the predominance issue within the context of nation-wide asbestos litigation, and, in discussing Fed.R.Civ.P. 23 and class action litigation, stated the following:
Framed for situations in which "class-action treatment is not as clearly called for" as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification *1237 where class suit "may nevertheless be convenient and desirable." To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must "predominate over any questions affecting only individual members"; and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." In adding "predominance" and "superiority" to the qualification-for-certification list, the Advisory Committee sought to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Sensitive to the competing tugs of individual autonomy for those who might prefer to go it alone or in a smaller unit, on the one hand, and systemic efficiency on the other, the Reporter for [the amendments] cautioned: "The new provision invites a close look at the case before it is accepted as a class action...."
... [T]he Advisory Committee ... anticipated that in each case, courts would "consider the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit." They elaborated:
"The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action. On the other hand, these interests may be theoretical rather than practical; the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable."
Id. at 615-16, 117 S.Ct. 2231 (citations omitted).
The Court further explained that "the Advisory Committee had dominantly in mind vindication of `the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" Id. at 617, 117 S.Ct. 2231. Quoting from the Seventh Circuit opinion in Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (1997), the Court continued:
"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."
Achem Prods., Inc., 521 U.S. at 617, 117 S.Ct. 2231.
The Louisiana Supreme Court recently reaffirmed a previous statement it made regarding class actions in both McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984), and State ex rel. Guste v. General Motors Corp., 370 So.2d 477 (La.1978), stating, "As we have made clear before and reiterate today, the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification." Bartlett v. Browning-Ferris Indus. Chem. Servs., Inc., 99-0494 (La.11/12/99), 759 So.2d 755, 756. Moreover, the Louisiana Supreme Court in 1984 advocated for the maintenance of class actions, stating, "[I]f there is to be an error made, it should be in favor and not against the maintenance of the class action, for it is always subject to *1238 modification should later developments during the course of the trial so require." McCastle, 456 So.2d at 620.
This court bore these principles in mind in Duhé v. Texaco, Inc. 99-2002, p. 27 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, 1086, writ denied, 01-0637 (La.4/27/01), 791 So.2d 637, wherein the court, after a recitation and meticulous analysis of the history of the class action procedural mechanism, affirmed a class certification, noting that the principal justification for certification of a class under Rule 23(b)(3) is "the vindication of the rights of groups of persons with negative value lawsuits" and that this justification is "often used as the sole rationale for finding superiority." Of particular significance in Duhé is that the court acknowledged that many of the members of the class of royalty owners were facing the possibility of small individual recoveries by seeking payment of royalties owed in amounts of less than $100 per year.
At the certification hearing in the case currently before us, the plaintiffs presented the testimony of Dr. Philip Bedient, an expert in the field of contaminant transport; Dr. Bill Mundy, an expert in the field of real estate valuation; and several of the proposed class representatives. Dr. Bedient's testimony centered around the typical movement of PCE through soil following a spill, the readings taken over the years from various well sites in the Fisherville community, the reasons that "nondetects" may have occurred, and the amoeba-like characteristic of the plume. Dr. Mundy's testimony addressed the process by which he would calculate the value impacts on the properties within the boundaries devised. He explained that the devaluation of properties will vary depending on each piece's proximity from the spill site. He opined that the property devaluation figures for each individual plaintiff could be easily calculated after performing a mass appraisal and would be the simplest and most cost-efficient method. The proposed class representatives' testimonies centered around their length of residence in the Fisherville community, whether they rent or own homes and/or property in the Fisherville community, their knowledge of the contamination, and their location within the proposed class boundaries.
At the same hearing, the defendants presented the testimony of Steve Larson, an expert in the field of groundwater hydrogeology and contaminant transport, to contradict the testimony of Dr. Bedient. Larson testified that groundwater movement is generally in a south-southeasterly direction and that the current sampling data did not support the plume boundary extending north of the railroad tracks. He opined that the plume is more accurately defined by a square rather than an amoeba-like shape. However, the defendants failed to present testimony to refute the testimony of Dr. Mundy.
We acknowledge that each participant in the lawsuit may be entitled to recover varying amounts for his or her individual damages. We also acknowledge that each participant in the lawsuit would, to a degree, be required to present evidence unique to his or her situation to prove that he or she is entitled to recover the damages sought. The damages sought by the potential class participants are not of the type that are definitively and easily quantifiable; they require individual proof by each plaintiff. Nevertheless, we cannot find that the denial of certification is supported by the record before us. While we recognize that the trial court is accorded great deference and discretion, we have a constitutional obligation to review the facts and determine whether the trial court's conclusions are clearly without evidentiary support. Perkins v. Entergy Corp., 00-1372, 00-1387, 00-1440 (La.3/23/01), 782 *1239 So.2d 606. Because we find that the record clearly supports that all of the requirements of La.Code Civ.P. art. 591 have been met, we find that the trial court abused its discretion in the denial of class certification.

DISPOSITION
For the foregoing reasons, we reverse the trial court's denial of class certification and remand this matter for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Ms. Guillory appeared in the suit individually and on behalf of her five minor children.