635 So.2d 446 (1994)
Marzell Ike DUMAS, et al., Plaintiff-Appellants,
v.
ANGUS CHEMICAL COMPANY, et al., Defendants-Appellees.
No. 25632-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1994.
*448 Dennis Hennen, for plaintiffs-appellants.
Ben R. Hanchey, Steven F. Katz, for defendants-appellees ANGUS Chemical Co., et al.
Before VICTORY, STEWART and PRICE (ad hoc), JJ.
VICTORY, Judge.
This is an appeal from a ruling of the trial court denying plaintiffs' motion for certification of the instant case as a class action, pursuant to LSA-C.C.P. Arts. 591 et seq. For the reasons stated, we reverse.

FACTS
On May 1, 1991, an explosion occurred at a nitroparaffins plant in Sterlington, Louisiana, with the force of approximately 12,000 pounds of TNT. The plant was owned by defendant, ANGUS Chemical Company ("ANGUS"), and at the time of the accident was operated and maintained by co-defendant, IMC Fertilizer, Inc. ("IMC").
The town of Sterlington is located just north of the plant. The explosion was in a northeasterly direction, and primarily affected the northeastern portion of the town. As a result of the explosion, the entire town of Sterlington, estimated population 1,140, was evacuated for approximately 30 hours. An estimated 650 students and teachers from both Sterlington elementary and high schools were also evacuated. These schools are attended by students who reside in Sterlington proper and in outlying areas. Additionally, all of the Sterlington hospital employees and patients were evacuated and taken to other facilities.
The explosion received much media attention from local newspapers and television stations. Eight IMC employees died, and a substantial number of area residents, including employees and non-employees, sustained personal injuries and property damage. Several local businesses were unable to conduct business due to extensive damage to their facilities. Sterlington schools were closed for two and one-half days.
Shortly after the accident, both ANGUS and IMC began providing local residents with medical care, lodging in local motels, meals, groceries, dry-cleaning, new clothing and repairs to damaged buildings and homes. An insurance adjusting company, General Adjustment Bureau ("GAB"), was retained to identify and compensate claimants. Furthermore, a general contractor, Breck Construction Company, was hired to repair and/or rebuild damaged homes and businesses.
Through the efforts of GAB, an estimated 940 explosion-related claims were settled without filing suit, and a total of $7.4 million dollars was paid. Other claimants who did not settle or settled only partially filed lawsuits. *449 Approximately 245 lawsuits were filed by 694 individual claimants, in Louisiana and Texas state and federal courts.
On April 30, 1992, plaintiffs, Marzell Ike Dumas, et al., filed a "Petition in Class Action for Litigation and Recovery of Damages in Mass Tort," against ANGUS and IMC, as the owners and operators of the plant, and against several other co-defendants[1], as the designers and servicers of the plant and/or its component parts. The plaintiffs appeared both individually and as representatives of the class of all others similarly situated with respect to claims for damages sustained as a result of the explosion. The petition alleged that the action was suitable for certification as a class action under the provisions of LSA-C.C.P. Art. 591 et seq. Liability of the plant owner was alleged to be based upon LSA-C.C. Art. 667, and liability of those defendants having custody and control of the plant was alternatively based on LSA-C.C. Art. 2317 or LSA-C.C. Art. 2315. The plaintiffs further alleged that, under LSA-C.C. Art. 2315.3, they were entitled to exemplary damages from the defendants' reckless handling of hazardous substances.
On August 18, 1992, the plaintiffs filed a "Motion for Class Certification and Related Orders." The proposed "class" included the following persons:
All persons or entities residing or located, or owning property, or owning or operating business, in Ouachita, Morehouse or Union Parishes, Louisiana, at the time of the explosion of the Angus Chemical Company Nitroparaffins Plant in Sterlington, Louisiana, on May 1, 1991, who or which sustained legally compensable damages, and who may be entitled to exemplary damages, as a result of said explosion.
The plaintiffs also proposed the following subclassifications:

Subclass A: All members of the class whose claims are not subject to the exclusive remedy defense of the Louisiana Workers' Compensation Act nor the defense of res judicata.

Subclass B: All members of the class whose claims may be contested as subject to the exclusive remedy defense of the Louisiana Workers' Compensation Act.

Subclass C: All members of the class whose claims may be contested as subject to the defense of res judicata.
After a two-day hearing on the matter, wherein extensive testimony and exhibits were introduced into evidence, the trial court denied the request for certification. In its reasons for judgment, the trial court concluded that class action was not necessary because potential claimants had ample opportunity to assert their rights. The trial court supported its judgment by noting that: (1) much notoriety was given to the event; (2) the news media publicized the approaching prescriptive period; and (3) a large number of lawsuits were filed and numerous claims had been settled prior to the certification hearing. The trial court also found that the diversity of the remaining claims (including wrongful death, personal injuries, interruption of business, evacuation of homes, property damage, loss of earnings, medical and hospital expenses, and exemplary damages), made class action an inappropriate means for adjudicating the demands. Based upon these findings, the court held that the basic requirements for class action were not present.
Plaintiffs appealed, arguing that the trial court erred in refusing to certify the class. They contend that the requirements of LSA-C.C.P. Art. 591 et seq. have been met and that a class action should have been ordered.

DISCUSSION
The Louisiana class action has been given much attention by the Supreme Court. The *450 seminal cases on the issue are McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612 (La.1984); State ex rel. Guste v. General Motors Corp., 370 So.2d 477 (La.1978) (on rehearing); Williams v. State, 350 So.2d 131 (La.1977); and Stevens v. Board of Trustees, 309 So.2d 144 (La. 1975). Those cases set out the basic requirements for a class action, provided for in LSA-C.C.P. Arts. 591 and 592, as follows:
(1) a class so numerous that joinder is impracticable; and
(2) joinder as parties to the suit one or more persons who are
(a) members of the class and
(b) so situated as to provide adequate representation for absent members of the class; and
(3) a "common character" among the rights of the representatives of the class and the absent members of the class.
McCastle, supra at 616.
All three of these elements must be satisfied for a class action to be certified. It is well settled that the initial burden of proof is on the plaintiffs seeking to maintain a class action.

NUMEROSITY
The first requirement, often referred to as "numerosity," is determined based upon the facts and circumstances of each individual case. There is no set number above which a class is automatically considered so numerous as to make joinder impractical as a matter of law. O'Halleron v. L.E.C., Inc., 471 So.2d 752, 755 (La.App. 1st Cir.1985). Likewise, the numerosity element may not be met by simply alleging that a large number of potential claimants exist. To the contrary, the jurisprudence has held that, in certain situations, a "class" can be too numerous to satisfy the numerosity requirement. Rivera v. United Gas Pipeline Company, 613 So.2d 1152, 1154 (La.App. 5th Cir.1993), citing Farlough v. Smallwood, 524 So.2d 201 (La.App. 4th Cir.1988), writ denied, 526 So.2d 810 (La.1988). For the numerosity requirement to be met, the plaintiff must show that joinder is impractical, but, at the same time, that there is a definable group of aggrieved persons.
The evidence contained in the record shows that this element has been satisfied. More than 600 aggrieved persons filed suit against the defendants, and it is highly likely that additional unasserted claims exist. These claimants represent a definable group since their claims are explosion-related, and they are not so numerous that it makes identification and notice impractical.
Furthermore, cumulation of the individual lawsuits, pursuant to LSA-C.C.P. Art. 461, et seq., and joinder of the parties, pursuant to LSA-C.C.P. Art. 647, is not feasible, and would create a procedural quagmire. Likewise, consolidation of the individual suits, with separate trials for liability and damages, pursuant to LSA-C.C.P. Arts 1561 and 1562, would be impractical. The large number of plaintiffs makes it highly probable that membership of the group will change, with parties being added and dismissed. Class action is more appropriate than cumulation, joinder and/or consolidation because it was designed to accommodate the number of parties involved in the case before us.
Furthermore, we agree with the plaintiffs that consolidation is inferior to class action because it requires that the same jury decide liability and damages, unless all of the parties consent to have different juries. LSA-C.C.P. Art. 1562(B). The probability of obtaining unanimous consent from this many parties is quite unlikely. Class action procedure does not require that the parties consent to having different juries decide separate issues. In class actions, separate trials of separate issues "... may be heard before the same or another jury as the court may direct in the interest of justice." LSA-C.C.P. Art. 593.1(C) (Emphasis added).

ADEQUACY OF REPRESENTATION
The second requirement, "adequacy of representation," is to ensure that the absent class members are properly represented. It requires that the claims of the class representatives be a cross-section of, or typical of, the claims of all class members. Livingston Parish Police Jury v. Acadiana *451 Shipyards, Inc., 598 So.2d 1177 (La.App. 1st Cir.1992), writ denied, 605 So.2d 1122 (La. 1992).
In their pleading entitled "Designation of Subclasses and Representatives," the plaintiffs named 21 individuals as representatives of the proposed class and subclasses. The depositions of each of these representatives are contained in the record. Our review thereof indicates that the proposed representatives claim damages for various things, including wrongful death, personal injuries, property damage, lost wages, lost business profits and medical bills, all resulting from the explosion. At the time of the explosion, each of the representatives resided, worked or owned businesses in the Sterlington area. They are similarly situated to absent claimants, and their claims are typical of those of other class members.

COMMON CHARACTER
The third requirement, "common character" among the rights asserted, has been the primary focus of the Supreme Court's discussion and analysis. The most recent discussion of the common character analysis can be found in McCastle, supra. Under Louisiana practice there must be a "common character" among the rights of the representatives and the absent members of the class in order to make class action appropriate. LSA-C.C.P. Art. 591(1); McCastle, supra at 616.
To satisfy this element, the plaintiff must establish that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. However, the inquiry does not end there, because the "common character" element encompasses more than the simple existence of law and fact common to the class. Ellis v. Georgia-Pacific Corporation, 550 So.2d 1310 (La.App. 1st Cir.1989), writ denied, 559 So.2d 121 (La.1990).
The "common character" requirement, as explained by the Louisiana Supreme Court, restricts class action to those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. McCastle, supra at 616. When a common character of rights exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of a procedural device: (1) effectuating the substantive law at issue in the case; (2) providing judicial efficiency in carrying out the substantive law; and (3) insuring individual fairness to all parties involved. McCastle, supra at 616; Guste, supra at 488; Williams, supra at 133-34; and Stevens, supra at 151. If the superiority of a class action is disputed, the court must determine whether these goals would be better served by some other procedural device. McCastle, supra at 617.

Common Questions of Law and Fact
In this case, questions of law or fact common to the members of the entire class predominate over those questions affecting only individual members. In their petition, plaintiffs alleged liability of the defendants based upon LSA-C.C. Arts. 667, 2315 and 2317. Several common issues exist: (1) the cause or causes of the explosion; (2) the determination of the direction and force of the explosion; (3) the determination of the respective duties of the defendants; (4) the determination of which defendants, if any, were at fault, and to what extent; and (5) the determination of whether an award of exemplary damages is appropriate.
The individual issues of law and fact that exist in this case involve questions of individual quantum or possible affirmative defenses which have been asserted by the defendants against some, but not all, of the plaintiffs.
It is well settled that individual questions of quantum do not preclude a class action when predominant liability issues are common to the class. McCastle, supra at 620; Guste, supra at 489; Williams, supra at 136; and Stevens, supra at 149. Likewise, when the defenses asserted with respect to the predominant issues of liability are substantially similar and without material deviation, class action is appropriate. McCastle, supra at 620. The pleadings in the case *452 before us indicate that, with respect to the predominant issues of liability, there will be no material deviations between the defenses advanced. Although several of the defendants have asserted that their liability to certain plaintiffs is limited by either Louisiana workers' compensation law or res judicata, these affirmative defenses are not determinative of the ultimate issue of liability. Rather, they merely limit or bar recovery in the event that the defendants are found liable. Clearly, the common issues of causation and duty predominate over individual issues of damages and individual defenses asserted by the defendants.

Effectuating Substantive Law
Class actions may effectuate substantive law by: (1) opening courts to claims not ordinarily litigated, thus enabling courts to enforce legislative policies underlying those causes of action; and (2) enabling courts to recognize the full implications of recognizing rights or remedies by allowing them to determine what outcome in litigation would best serve the policies underlying the causes of action. McCastle, supra at 618.
Our review of the record indicates that some of the plaintiffs claim to have sustained severe damages as a result of the explosion. However, many other plaintiffs are presenting claims that are relatively small. Without class action, there is a risk that several of the class members will be unable to adequately protect their interests. Others who previously thought their claims to be insignificant and unworthy of individual prosecution may come forward as part of a class action to assert them.
Defendants argue strongly that class action is not necessary to open the courts to potential litigants. They note that a large number of individual suits were filed and a substantial number of injured persons settled their claims before class action was requested. Defendants reason that if claimants were able to file their own suits and/or were able to settle their claims without court assistance, then they do not need class action to protect them. Furthermore, the defendants contend that a large number of individual claimants will opt out if the class action is certified.
These arguments certainly weigh against the benefits to be attained by certification. However, at this early stage in the litigation the outstanding risk that several claimants' interests need protection justifies certification. Merely because a claimant filed suit individually or settled his claim without class action does not necessarily mean that he will not benefit from the protection afforded thereby. Likewise, those claimants that have expressed their intention to opt out are not committed to doing so. Some may reevaluate their positions and decide to participate in the class action.

Judicial Efficiency
One of the fundamental objectives of a class action is to achieve economy of time, effort and expense. McCastle, supra at 619. As noted, there are more than 600 possible claimants that fit within the proposed class. The court would be greatly burdened by separate suits or by the joinder or intervention of interested parties in separately brought actions. Class action was designed to handle this type of litigation, while still preserving the integrity of the proceedings for all parties involved.
Class action is clearly the most efficient procedural vehicle under these facts. By certifying this case as a class action, the trial court may employ the provisions of LSA-C.C.P. Arts. 593.1 and 594, which give the trial court discretion to amend or recall certification; enlarge, restrict or redefine the constituency of the class or issues; adopt a management plan for the litigation, including subdividing the action or separating the issues therein raised, and holding separate trials of separate issues.

Fairness to the Parties
Another objective of the class action is to promote uniformity of decision to similarly situated persons, without sacrificing procedural fairness or causing undesirable results. McCastle, supra at 621. In order to determine whether the class action will be fair to the parties, the court should consider the injustice which can result from inconsistent *453 judgments in separate actions and the size of the claims of absent members.
Denying class action and allowing individual suits to proceed, would create a significant risk of inconsistent judgments for the claims of many similarly situated plaintiffs. Inconsistent adjudications would send mixed messages to the defendants regarding the propriety of their conduct and the extent of the duty owed. In one case a defendant could be found liable, and exemplary damages awarded under LSA-C.C. Art. 2315.3. In a second case, the same defendant might be found liable, but no exemplary damages awarded. In yet a third case, the defendant might not be liable at all. Each of these findings would presumably be based upon the same facts and circumstances. Class action was designed to prevent these types of inconsistencies.
Based on the foregoing, we find that plaintiffs have fulfilled both the statutory and jurisprudential requirements for class action. Although the trial judge has discretion in deciding whether class action is appropriate, the recent jurisprudential trend is to require the trial court to grant certification when the elements have been met. See, e.g., Spitzfaden v. Dow Corning Corporation, 619 So.2d 795 (La.App. 4th Cir.1993), writs denied, 624 So.2d 1236 (La.1993) and 624 So.2d 1237 (La.1993); Adams v. CSX Railroads, 615 So.2d 476 (La.App. 4th Cir.1993); and Rivera, supra.[2] This trend is consistent with the statements made by the Louisiana Supreme Court, which direct that if there is to be an error made, it should be in favor of, and not against the maintenance of, the class action because it is always subject to modification should later developments during the course of the trial so require. McCastle, supra at 620. See also, LSA-C.C.P. Art. 593.1(B).
In conclusion, we note that Louisiana class action affords the trial court much discretion in restricting and defining the constituency of the class and any subclasses thereof. Certainly, the class must include those persons who were damaged by the explosion and have not completely settled their claims. The plaintiffs' proposal to create a class or subclass to include claimants who have previously settled their claims either completely or partially rests within the sound discretion of the trial court. By reversing the trial court's ruling denying any class action, we do not imply that the proposed class and subclasses put forth by the plaintiffs are the ones that should be certified by the court.

DECREE
For the reasons stated, the judgment of the trial court denying class action is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] The remaining co-defendants are: Ford, Bacon & Davis Companies, Incorporated; IMC Fertilizer Group, Inc.; IMC Corp.International Minerals & Chemical; International Minerals & Chemical Corporation; IMC, Inc.; IMCERA Group, Inc.; Cooper Industries, Inc.; Glitsch, Inc.; Foster Wheeler Constructors, Inc.; Deutsche Babcock Technologies, Inc.; Alberta Natural Gas, Inc. of Calgary; Alberta Natural Gas Company, Ltd.; Robinson Contractors, Inc.; Breck Construction Company, Incorporated; James Machine Works, Inc.; ENPRO Services Co., Inc.; Grinnell Corporation; Mid-South Fire Protection, Inc.; Teledyne Farris Engineering; and M.W. Kellogg Company.
[2] The exception to this trend is Hunter v. Union Carbide Corporation, 468 So.2d 28 (La.App. 5th Cir.1985), relied upon by the trial court and the defendants. In that case, the court decided that class action was not appropriate based, in part, upon the fact that nearly half of the 17,000 potential claims resulting from the explosion had already been settled and many remaining plaintiffs were represented by attorneys. Although Hunter is somewhat similar to the case at bar, actually it is grounded heavily upon the particular facts and evidence presented therein. As we have stated, the particular facts presented here favor class action.