643 So.2d 319 (1994)
James T. STRONG, et al., Plaintiffs-Appellants,
v.
BELL SOUTH COMMUNICATIONS, INC. d/b/a South Central Bell, Defendants-Appellees.
No. 26010-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1994.
Adams & Reese by Aex E. Cosculluela, Robert E. Couhig, Jr. and Forrest Hinton, New Orleans, William R. Coenen, Jr., Rayville, Gravel, Brady and Berrigan-Alexandria by James J. Brady and Camille F. Gravel, Jr., Alexandria, for appellant.
Cotton, Bolton, Hoychick & Doughty by John Hoychick, Jr., Rayville, Jones, Walker, Waechter, Poitevent, Carrere & Denegre by Herschel L. Abbott, Jr., Edward H. Bergin, *320 Maurice J. Naquin, Ronald W. Tweedel and R. Patrick Vance, New Orleans, for appellee.
Before SEXTON and BROWN, JJ., and WESTERFIELD, J. Pro Tem.
WESTERFIELD, Judge Pro Tem.
This is an appeal from the trial court's ruling denying plaintiffs' motion for class certification. C.C.P. Art. 591, et seq. For the reasons stated, we affirm.

FACTS
Effective January 1, 1987, the Federal Communications Commission (FCC), with the stated objective of fostering competition in the inside wire maintenance industry, ordered the detariffing of inside wire maintenance service (IWMS). As a result of this order, South Central Bell (SCB) was required to unbundle IWMS from its basic monthly local telephone service package, and for the first time, IWMS became optional for SCB's Louisiana customers. Prior to the FCC order, the Louisiana Public Service Commission and the FCC regulated the installation and maintenance of simple inside wiring, and maintenance of inside wiring was performed by SCB as part of its basic telephone service.
SCB filed an interim tariff, effective November 12, 1986, which placed all SCB eligible customers on an interim IWMS plan. The customers were informed by inserts in their November and December bills that as of January 1, 1987, IWMS was optional, and they would have a choice as to who repaired the telephone wires inside their home. In January 1987, SCB placed another billing insert including a special ballot in customers' monthly bills explaining that effective January 1, 1987, they must decide who they wanted to repair the telephone wires inside their homes.
During the interim period, January 1, 1987December 31, 1987, while SCB engaged in its customer contact campaign, until such time as customers affirmatively accepted the plan, asked to be removed from the plan or were dropped from the plan for failing to respond, all customers were charged the same amount they were paying for basic service immediately prior to the FCC's deregulation order. Informational billing inserts with an explanation of the monthly inside wire maintenance plan and rate changes with a toll free number for customers who had any questions were sent out in the April, May, and August 1987 customer bills. Those customers who did not respond to any SCB contacts by December 31, 1987, were removed from the interim plan in early 1988 and were notified of their non-participation status.
At the end of SCB's year-long campaign, it had received responses from 97 percent of its residential customers, 81 percent electing to continue their IWMS with SCB. Eighty-eight percent of simple business customers responded, 70 percent electing to continue SCB's IWMS.
SCB explained the inside wire maintenance plan to new customers who began service after June 1, 1987, or customers who changed telephone numbers or otherwise changed their service after January 1987, and these customers were given the opportunity to subscribe to the IWMS Plan.
Plaintiff-appellants sought class certification on behalf of IWMS customers who paid IWMS charges to SCB pursuant to contracts which are allegedly void for lack of valid and affirmative consent. They alleged a class of at least one million customers in Louisiana during the relevant period of time. They contend that SCB used negative option billing inserts, which SCB understood would be ignored or misunderstood by the vast majority of its customers, and through these inserts, SCB unilaterally effected almost blanket enrollment of its customers into what was to be an optional service. They further assert that SCB utilized standard communications fraught with deceptive or misleading representations and omissions of material fact. SCB denies that they implemented a negative option solicitation scheme or practiced deception.
These SCB customers filed a motion for class certification, which sought to certify:
All residential and simple business customers of SCB in Louisiana, who have ever been charged and have paid for SCB's *321 optional IWMS between the date on which IWMS was first "unbundled" from basic local telephone service and became optional to local telephone service customers in Louisiana, and on the date on which this court may certify the instant case as a class action.
The trial court denied the motion for class certification, concluding that: (1) they failed to meet their burden of establishing the common issues of fact and law predominated over individual issues of fact and law; and (2) they failed to meet their burden of establishing the named representatives would adequately represent the interest of absent class members.
The trial court stated:
This action, if certified as a class action, would require at a minimum, a determination as to how each customer learned of the IWMS plan, whether or not there were oral representations, what the customer's understanding was as to those representations, whether or not the customer affirmatively subscribed to the IWMS plan, whether the customer relied on any such oral representations in subscribing to the IWMS plan, whether or not the customer received written materials regarding the IWMS, whether or not the customer read any such written materials, what each customer's understanding was of those written materials and whether or not the customer relied on any written materials in affirmatively accepting the IWMS plan, whether or not the customer affirmatively rejected the IWMS, whether the customer was charged for IWMS after affirmatively rejecting the plan, whether or not any customer received any IWMS.
The trial court found that SCB customer notifications were not in the form of a negative option scheme. It also found that SCB had defenses to claims that might be unique to certain named plaintiffs.

DISCUSSION
Before a class action can be certified, plaintiff has the burden of showing:
(1) the parties are so numerous as to make joinder impracticable;
(2) adequate representation of absent class members; and
(3) common character among class members of the right sought to be enforced.
See C.C.P. Arts. 591 and 592; McCastle v. Rollins Environmental Services, 456 So.2d 612 (La.1984); State ex rel. Guste v. General Motors Corp., 370 So.2d 477 (La.1978), on rehearing; Williams v. State, 350 So.2d 131 (La.1977); Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144 (La. 1975); and Dumas v. Angus Chemical Co., 635 So.2d 446 (La.App. 2d Cir.1994). The trial court did not discuss the numerosity requirement, but found that the adequate representation and common character requirements were not present. Because we do not find that the adequate representation requirement was satisfied, we pretermit a discussion of the other requirements necessary to certify a class action.

ADEQUATE REPRESENTATION
The adequacy of representation requirement ensures that absent class members are properly represented by requiring that the claims of the class representatives be a cross-section of, or typical of, the claims of all class members. Dumas, supra; Livingston Parish Police Jury v. Acadiana Shipyards, 598 So.2d 1177 (La.App. 1st Cir. 1992), writ denied, 605 So.2d 1122 (La.1992). The determination of whether the plaintiffs here are situated so that they may fairly insure adequate representation is made by the court. Ellis v. Georgia-Pacific Corp., 550 So.2d 1310 (La.App. 1st Cir.1989), writ denied, 559 So.2d 121 (La.1990).
Plaintiffs contend that the adequacy of representation requirement for class certification is satisfied because the representative's claims are a typical cross-section of the types of claims asserted and are not antagonistic to the interests of the absent class members. They submit that the trial court erred in concluding the proposed class was too broad because the proposed class is only as broad as SCB's course of conduct mandates. They contend that they adequately represent the proposed class whose members were each victimized by SCB's state-wide uniform and systematic course of conduct.
*322 We agree with the trial court's conclusion that a negative option scheme did not exist. The existence of a negative option scheme is an important component of the plaintiffs' certification motion because such a finding gives rise to a greater degree of typicality between the plaintiffs and absent class members similarly enrolled. Between November 1986 and December 1987, SCB provided customers with numerous opportunities to choose to continue SCB's IWMS or to discontinue the service. Those who had not responded by December 1987 were dropped from the plan. Compare Sollenbarger v. Mountain States Tel. & Tel. Co., 121 F.R.D. 417 (D.N.M.1988).
The absence of a negative option plan supports the conclusion that the defendant's deceptive and misleading marketing techniques, if true, impacted differently on individual class members. The basis of plaintiffs' claims are disparate causing the class representatives to be too diverse to protect adequately the interests of the absent class members.
Because the trial court found that plaintiffs' pleadings identify at least two groups, those who contracted for IWMS but whose consent was allegedly obtained through the use of incomplete or misleading information and those who were allegedly enrolled in the IWMS plan without their consent, plaintiffs submit that it could have granted class certification and designated two or more subclasses.
The plaintiffs named five individuals as representatives of the proposed class. The depositions of each of these representatives are contained in the record. The claims of the named plaintiffs include nullity, rescission of contract, and restitution based upon: payment of a thing not due; error/fraud; breach of good faith; and violation of state antitrust laws.
Plaintiff Strong's ballot consenting to IWMS was received by SCB on November 10, 1987. His secretary, who was responsible for opening his mail and paying his bills, apparently executed the ballot without his authorization. Strong never read any of the billing inserts. Plaintiff McConnell, who also does not read the inserts included with his monthly bill, does not recall having consented to subscribe to IWMS and claims he was enrolled without his knowledge or consent. Plaintiff May testified that he never took the time to read any information included with his bill and does not recall having consented to subscribe to the IWMS plan. Plaintiff Jackson apparently consented to the IWMS verbally after she spoke with a SCB representative when calling to reconnect her phone in 1991, but she claims that she was not provided with any of the details of the service. Plaintiff Henry, who received telephone service in November 1991, claims that she was charged for the service which she did not request.
The trial court stated in its Reasons for Judgment denying plaintiffs a new trial:
In the case at hand, while all proposed class representatives are recipients of SCB's IWMS Plan, that factor in and of itself is not sufficient to meet the adequacy of representation test. While proposed class members and absent class members may be recipients of and paying for SCB's IWMS Plan, the manner in which they came to subscribe and/or be enrolled in the Plan is very different. The class representatives by their own admission became enrolled in the IWMS Plan under very differing circumstances: some affirmatively subscribed, some verbally, some in writing, some claim to have never assented to their enrollment in the Plan, some read and allegedly relied on written communications in subscribing, some admit to having never read any written communications. It is these circumstances under which class representatives and absent class members came to subscribe and/or be enrolled into and paid for the IWMS Plan that is the determining factor. If there are this many different sets of circumstances surrounding the enrollment of the five (5) proposed class representatives, how can they even begin to purport to adequately represent absent class members.
We agree that the plaintiffs named in the petition cannot adequately represent the proposed class. None of the named plaintiffs consented to SCB's IWMS based upon the information SCB provided by means of inserts in their customers' monthly bills. Each *323 of these plaintiffs testified that they did not read these billing inserts. Accordingly, we find that the adequate representation requirement was not satisfied.

DECREE
At appellants' cost, the trial court judgment is AFFIRMED.
BROWN, J., dissents and assigns written reasons.
BROWN, Judge, dissenting.
Plaintiffs can adequately represent the proposed class. A class action is the only practical way to resolve this question.