843 So.2d 504 (2003)
Mr. and Mrs. Adam THOMAS, Sr., Anna Perkins, Mr. and Mrs. Willie Cromedy, and Others
v.
MOBIL OIL CORPORATION, Calciner Industries, Inc. and Murphy Oil, U.S.A., Inc.
No. 2002-CA-1904.
Court of Appeal of Louisiana, Fourth Circuit.
March 19, 2003.
Writ Denied June 6, 2003.
Allain F. Hardin, Fransen & Hardin, New Orleans, LA, and Sidney D. Torres, III, Roberta L. Burns, Chalmette, LA, and Gilbert V. Andry, III, Jerald N. Andry, Jr., Andry & Andry, L.L.C., New Orleans, LA, and Gerald E. Meunier, Irving J. Warshauer, Gainsburgh, Benjamin, David, Meunier & Warshauer, New Orleans, LA, and T. Allen Usry, USRY, Weeks & Matthews, New Orleans, LA, for Plaintiff/Appellee.
Charles S. McCowan, Jr., Glenn M. Farnet, Julie Parelman Silbert, Alan J. Berteau, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P., Baton Rouge, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS SR., Judge EDWIN A. LOMBARD).
DENNIS R. BAGNERIS SR., Judge.
Defendant-appellant, Exxon Mobile Corporation, et al., appeals the trial court's *505 judgment, which overruled its exceptions of improper venue and improper cumulation of actions. We affirm. For the facts and reasons described in the excellent reasons for judgment issued by the trial court, stated below, we accept his opinion in toto.
CONCLUSION
The trial court did not err when it denied defendants' exceptions of improper venue and improper cumulation. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS STATE OF LOUISIANA

MR. AND MRS. ADAM THOMAS, SR. ET AL. VERSUS

MOBIL OIL CORPORATION, ET AL. No. 90-23370 June 18, 2002

JUDGMENT AND REASONS FOR JUDGMENT
This matter came for hearing on the 17th day of May 2002 on defendants' Exceptions of Improper Venue and Improper Cumulation of actions. Present for hearing were:
Mr. Alan Hardin, Esq. Attorney for Plaintiff, Mr. and Mrs. Adam Thomas
Mrs. Roberta Burns, Esq.
Mr. Gilbert Andry, III Esq.
Mr. Gerald Meunier, Esq.
Mr. Glen Farnet, Esq. Attorney for Defendant, ExxonMobil
Mr. Alan Berteau, Esq.
This Court, after considering the law applicable to the facts of this case, the evidence presented, and arguments of counsels finds in favor of the plaintiffs', Mr. and Mrs. Adam Thomas, Sr. et al and against the defendants' ExxonMobile for the reasons set forth below.

BACKGROUND
The action which is pending before this Court has been filed as a class action. There has been no hearing on certification as of this date. The putative class here consists of residents of both Orleans and St. Bernard Parishes. The defendants are physically located and have their primary place of business in St. Bernard Parish. The action arises out of allegations that the defendants have allowed certain emissions to occur at the plant with resulting deleterious effects to the residents of Orleans and St. Bernard Parishes. It is clear that any alleged wrongful conduct occurred in St. Bernard Parish. It is also clear that damages allegedly have been sustained by residents in both Orleans and St. Bernard Parishes.
The defendants have filed an exception of improper venue alleging that venue is proper only in St. Bernard Parish because that is the parish where any wrongful conduct occurred and where some of the alleged damages suffered by some putative class members occurred. The defendants have also filed an exception of improper cumulation of actions alleging that there is no community of interests among the plaintiffs constituting the putative class. Plaintiffs have opposed both of these exceptions.
For the reasons assigned below, defendants' exceptions of improper venue and improper cumulation of actions are both denied.

CUMULATION
Defendants have also filed an exception of improper cumulation of action under Article 926(7) (based on the provisions of *506 Article 463) of the Code of Civil Procedure. Cumulation is not relevant to the current case. Therefore, extraction of its concept of "community of interests" and application of cases interpreting and applying this concept is misplaced.
Cumulation under Article 463 is a procedure pursuant to which several plaintiffs may sue several defendants in the same proceeding and have all their claims resolved. In a cumulated action, each plaintiff presents a case and each defendant responds. When the number of plaintiffs suing one or more defendants climbs into the thousands and membership in the group of plaintiffs is fluid and changing, such as here, each plaintiff cannot appear, and cumulation is not an appropriate tool.
It is at that point that the provisions governing class actions must be applied to determine if a resolution of all claims can be appropriately conducted in one proceeding. In fact, the articles on class actions provide that it is where numerosity of plaintiffs makes joinder impracticable that class action proceedings are appropriate. See LSA C.C.P. art. 591(A)(1). See Thomas v. Charles Schwab and Company, Inc., 95-1405, 683 So.2d 734 (La.App. 3rd Cir.9/25/1997), writ denied, 97-0009, 96-2579, 686 So.2d 858, 859 (La.1/24/1997):
Parties who are attempting to certify a class do not first cumulate their actions... The prerequisites for each action are similar. However, the difference between Louisiana Code of Civ. P. Article 591 and Article 463 is that the former is specifically for class actions and the latter is for cumulation of individual actions... Class action is more appropriate than cumulation where there is a large number of plaintiffs or defendants involved.
Thomas, 683 So.2d at 737; citing Dumas v. Angus Chemical Company, 25,632, 635 So.2d 446 (La.App. 2nd Cir.3/30/1994).
Furthermore, cumulation of the individual lawsuits, pursuant to LSA C.C.P. art. 461, et seq., and joinder of the parties, pursuant to LSA C.C.P. art. 647 is not feasible, and would create a procedural quagmire.... The large number of plaintiffs makes it highly probable that membership of the group will change, with parties being added and dismissed. Class action is more appropriate than cumulation, joinder and/or consolidation because it was designed to accommodate the number of parties involved in the case before us.
Dumas, 635 So.2d at 450. The Dumas case involved 600 plaintiffs, as opposed to thousands in the current case.
Defendants cite LaBorde v. American National Property and Casualty Co., 01-01091, 780 So.2d 501 (La.App. 3rd Cir.1/31/2001), writ denied, XXXX-XXXX, 791 So.2d 634 (La.4/27/2001), in connection with its exception of cumulation. The LaBorde case, however, deals with circumstances where a single plaintiff had received separate injuries in separate accidents with different defendants on different dates in different locations, a situation completely different from the case at bar. No class action involving large numbers of plaintiffs was filed. The court, under those circumstances, correctly applied the cumulation article, not the class action articles, to determine if the different claims of a single plaintiff against different defendants should be heard in one suit.
Defendants also rely on the Albarado v. Union Pacific Railroad Company, 2000-2540 et seq., 787 So.2d 431 (La.App. 4th Cir.4/25/2001), writ granted, decision reversed, XXXX-XXXX, 796 So.2d 666 (La.9/14/2001), to support their position. This reliance in support of their argument *507 on cumulation is also misplaced. In Albarado, several defendants were sued. In each suit the plaintiffs suing a particular defendant had sued only that defendant and no other defendants. As a matter of fact, the Court found that the Federal Employer's Liability Act ("FELA") was the exclusive remedy for the plaintiffs and that pursuant to the provisions of FELA, employees could sue only their respective employers/defendants. In effect, the Court was faced with a series of separate class actions with separate groups of plaintiffs each suing different defendants in effect a cumulation of actions. For that reason, the Court felt compelled to apply Article 463 regarding cumulation of actions to determine if the "cumulation of class actions against all six separate and independent defendants was in the interests of judicial efficiency."
The Court determined that the actions could not be cumulated in a single proceeding because such a proceeding would involve claims by "at least sixteen plaintiffs against ... six independent railroad defendants" with each defendant having "different locations, policies, practices, equipment and supervisors." Albarado, 787 So.2d at 439. The Court held that the existence of these facts "mitigates against cumulation." Although the Court, in closing, (and clearly in dicta) made casual reference to the concepts of "commonality" and "typicality" among the named plaintiffs' claims, noting that this would provide no support for "certifying" the attempted cumulation of separate class actions, the decision was clearly based upon Article 463 governing cumulation of actions. The Court applied this Article because, based on facts peculiar to that case and the provisions of FELA, the Court found that what the Albarado plaintiffs were really attempting to do was to cumulate six separate and distinct class actions into a single proceeding by way of Article 463.
In the current case, we have defendants who allegedly committed wrongful acts in St. Bernard Parish that purportedly resulted in damages being sustained by many persons, not only in that Parish, but in Orleans Parish as well. We are thus faced with a putative class of thousands of plaintiffs who have sued these defendants because of those alleged damages. If only Orleans residents had filed suit against these defendants, then there would be no doubt that a determination of whether a class action was the appropriate vehicle for resolving their claims would be made at an Article 592 certification hearing, and not under Article 463, despite the variables cited by defendants regarding wind direction, differing substances, location of exposures, and injuries, etc. Such variables would be addressed at an Article 592 hearing as a natural element of the conflict between plaintiffs and defendants on the battleground of commonality and typicality under the class action provisions of Article 591. The fact that one additional element, St. Bernard residence, is added to the mix does not take the resolution of these issues out from under the provisions of class certification and deposit them under Article 463 cumulation.
For the foregoing reasons, this Court declines to apply Article 461. Resolution of the propriety of all plaintiffs proceeding to a resolution of their claims in a single proceeding will await a certification hearing under Article 592.

VENUE
Since the putative class currently before the Court will not be disassembled based on statutory provisions relating to cumulation of actions, the class set forth in the petition filed in this matter is to be considered as a putative class and the class action as a class action for purposes of *508 matters such as venue brought before the Court prior to a class certification hearing. See City of Inglewood v. City of Los Angeles, 451 F.2d 948, 950 (9th Cir.1972) ("We hold therefore it was proper for the District Court to assume the suit was a class action in order to determine if it had jurisdiction, without first making the finding required by 23(C)1; and that this court must likewise assume this was a class action until a contrary determination is made.").
Accordingly, a resolution of the issues raised by defendants' venue exception will be accomplished within the parameters of the statutory provisions regulating class actions. See Cacamo v. Liberty Mutual Fire Ins. Co., 99-3479, 99-3480, 99-3481, 764 So.2d 41, 43 (La.6/30/2000) ("The appropriate venue for [class action] claims is set forth in [Civil Procedure Article] 593..."). Article 593 of the Code of Civil Procedure provides that an action brought on behalf of a class "shall be brought in a parish of proper venue as to the defendant." LSA-C.C.P. art. 593(a) (emphasis added). The cited provision does not suggest that there is only one parish of proper venue. To the contrary, the Supreme Court has held that Article 593 allows for expansive venue options in class actions by providing that a class action may be brought in "a", meaning "any", parish of proper venue. See Cacamo, supra.
In resolving the issue of available venue for class actions, the Supreme Court has pointed out that in 1989 Article 593 was amended to remove language defining the words "proper venue" as Article 42 venue and that the legislature rejected an amendment that would have limited venue in class actions to that available under Article 42 only. See Cacamo, 764 So.2d at 45. The official comments to Article 593 pertaining to the 1989 amendment state that the reason for the amendment was "to broaden venue for class actions by striking the limitation to Article 42." Additionally, in 1997, when Article 593 was amended again, there was no reinstatement of the pre-1989 provision regarding limitation of venue to that available under Article 42.
In Cacamo, the sole issue before the court was whether class action plaintiffs involved in suits asserting contract claims against their own insurers were limited to the specific venue choices under Article 42 or whether they could take advantage of the supplementary venue articles found elsewhere in the Code of Civil Procedure and otherwise provided by law. The court conducted a thorough analysis of the general venue articles and the venue provision of class actions set forth in Louisiana Code of Civil Procedure Article 593 and held that Article 593 is clear on its face and permits the use of the supplementary venue provisions. See Cacamo, 764 So.2d at 47. One of these supplementary venue provisions is found at Article 74 of the Code of Civil Procedure. Plaintiffs contend that this venue provision, providing more than one venue option, as shown below, extends to the issue raised by defendants' exception and operates to defeat it.
Article 74 provides that venue is proper in a Louisiana tort action "in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained." LSA-C.C.P. art. 74. The plaintiffs assert that under Article 74 venue is proper in this class action in Orleans Parish because some of the named plaintiffs and members of the putative class sustained damages through exposure to the defendants' chemicals in Orleans Parish (even though the alleged wrongful acts or omissions that purportedly resulted in the release of the harmful chemicals occurred in St. Bernard Parish.) The clear language used in Article 593 and the Supreme *509 Court's decision in Cacamo support plaintiffs' position. The defendants' argument that St. Bernard Parish is the only parish of proper venue conversely finds no support in the law.
If a plant in St. Bernard Parish discharges harmful chemicals into the air, the chemicals may, as the plaintiffs have alleged, drift into Orleans Parish and cause damage by exposure to persons there. If subsequently a class action of Orleans Parish residents only is filed, venue would be proper in Orleans Parish pursuant to Article 74. If, as here, it is alleged that chemicals released in St. Bernard Parish have adversely affected both Orleans residents and St. Bernard residents there is no reason why venue, acceptable as to the defendant in Orleans Parish because of the damages occurring in Orleans Parish, is rendered any less acceptable under Article 593 as "a parish of proper venue as to the defendant" simply because the chemicals also injured St. Bernard Parish residents and they join in the suit.
If a class action may appropriately be certified to include all persons injured by the emissions (an issue which must be determined in a class certification hearing not on a venue exception) then, under Articles 593 and 74, venue would be appropriate in any parish in which the defendant caused damage to members of the class. The fact that some of the members of the class may also reside in the parish of wrongful conduct does not limit the appropriate class venue to that parish.
Defendants are attempting to "look behind the curtain" of this putative class action and predict that a future certification hearing would result in separation of Orleans and St. Bernard resident plaintiffs. This court will not engage in such conduct. Venue for the putative class currently before the court is appropriate in Orleans Parish since members of the putative class suffered damages in Orleans Parish.
Defendants' citation of authority to the contrary is unpersuasive. Their reliance on Albarado, supra, is totally misplaced. In that case, the Court of Appeal clearly held that a defendant who brings an exception of improper venue in a class action has the burden to prove that neither the alleged wrongful conduct nor the damages sustained by the plaintiff occurred in Orleans Parish in order to establish that venue is improper in Orleans Parish. The Fourth Circuit noted that the defendants had offered sparse evidence regarding these issues and that the evidence was insufficient to justify a reversal of the denial of the venue exception by the lower court as to several of the defendants. However, as to other defendants, the Appeals Court determined that venue was inappropriate since neither wrongful acts nor damage occurred in Orleans Parish.
The backbone of these factual determinations nonetheless was the legal conclusion that venue in class actions would be proper in any parish where damages were sustained, as allowed by Article 74. See Albarado, 787 So.2d at 436. Writs were sought by one of the two defendants, which had appealed the trial court's decision.
In granting writs and reversing the denial of the exceptions, the Louisiana Supreme Court also used Article 74 as the controlling venue article, but contrary to the circuit court, the Supreme Court ruled that the record evidence presented by defendants was sufficient to show that no plaintiff suffered injury in Orleans Parish. See Albarado, 796 So.2d 666 ("... we find that none of the plaintiffs' exposure to chemicals occurred in Orleans Parish, making Orleans Parish an improper venue for purposes of [Article 74].").
*510 By way of contrast, in the current case the defendants clearly admit that members of the putative class reside in Orleans Parish and have alleged that they were injured in the parish where they reside. Therefore, under the Albarado rationale, venue in the captioned matter is proper in Orleans Parish.
The balance of the cases offered by defendants establish a principle of law not applicable to the current case. The line of cases cited by defendants culminating in LaBorde, supra,[1] hold that where damage is initiated in the same parish that the wrongful conduct occurred, the plaintiff receiving the injury in the parish of wrongful conduct cannot bring suit in another parish even though the injury continues to manifest itself in that parish. This line of cases is inappropriate to the current case since we have a putative class containing members who were alleged to have actually been injured in Orleans Parish due to alleged wrongful conduct occurring in St. Bernard Parish. They are named plaintiffs, proposed class representatives and members of the putative class. They do not claim exacerbation of injuries originally sustained elsewhere. The allegations that they were exposed to the subject chemicals in Orleans Parish and, as a consequence suffered injury in that parish, establishes Orleans Parish as "a" parish of proper venue as to the defendants under Article 593.

CONCLUSION
Based on the foregoing, the defendants' exceptions of improper venue and improper cumulation of actions are both denied.
IT IS ORDERED, ADJUDGED and DECREED that defendants' exception of improper venue and improper cumulations of actions are hereby DENIED.
ARMSTRONG, J., concurring.
ARMSTRONG, J., concurring.
I respectfully concur. The issue, in effect, is whether St. Bernard Parish residents can be included as class members in a class action pending in Orleans Parish despite the fact that, if they had sued individually, they could not have sued in Orleans Parish. The Code of Civil Procedure does not address this issue. In the absence of any Code prohibition, it is best to allow St. Bernard Parish residents to participate as class members in the Orleans Parish class action, at least until the time of class certification. The alternative is to have a second class action, as to the same issues, in St. Bernard Parish. Such purely venue-drive multiplication of proceedings as to the same issues is undesirable because it increases costs and effort. The defendants assert that the same issues would not be involved because the same emissions did not affect both St. Bernard Parish and Orleans Parish. The plaintiffs assert just the opposite; that the same emissions did affect both St. Bernard Parish and Orleans Parish. This factual issue can be determined at the class certification hearing and, then, any consequent questions of the composition of the class, and whether there should be a second class action in St. Bernard Parish, can be addressed in light of that factual determination.
NOTES
[1] This line also includes Williams v. Montegut, 99-2119, 752 So.2d 329 (La.App. 4th Cir.2/2/2000), Belser v. St. Paul Fire and Marine Insurance Company, 509 So.2d 12 (La. App. 1st Cir.1987), Chambers v. LeBlanc, 598 So.2d 337 (La.1992), J & L Industries v. Rives, 31,742, 723 So.2d 541 (La.App. 2nd Cir.1/7/99), and Small v. Frieberg, 98-1223, 734 So.2d 1273 (La.App. 5th Cir.5/19/99)